IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STEFAN LEU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:10-0322 |
| ) | Judge Trauger |
| EMBRAER AIRCRAFT MAINTENANCE ) | |
| SERVICES, INC., STRUCTURAL ) | |
| MODIFICATION AND REPAIR ) | |
| TECHNICIANS, INC. d/b/a SMART, INC., ) | |
| and JOHNSON SERVICE GROUP, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM

Pending before the court is a Motion to Dismiss filed by defendant Structural Modification and Repair Technicians, Inc. ("SMART") (Docket No. 10). For the reasons discussed herein, this motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Stefan Leu, in an Arkansas resident who was hired by Defendant Johnson Service Group ("Johnson") on or about November 10, 2008.[1] Defendant Johnson had a contractual relationship with defendant Embraer Aircraft Maintenance Services, Inc. ("Embraer") to provide aircraft painting services at Embraer's Nashville, Tennessee facility (the

---

[1]Unless otherwise noted, the facts are drawn from the plaintiff's Amended Complaint (Docket No. 1 Ex. B).

1

"Facility"). Defendant SMART also had a contractual relationship with Embraer by which SMART agreed to provide employees for painting and service jobs for Embraer at the Facility as well.

In February 2009, Johnson sent the plaintiff to the Facility to provide aircraft painting services for Embraer, apparently on a long-term basis. The plaintiff's supervisor at the Facility was paint shop supervisor John Stier, who was an Embraer employee but also "controlled and supervised the details of the Plaintiff's work and could admonish, reprimand and terminate the plaintiff upon approval of management." (Docket No. 1 Ex. B at 2.) During this time, one of the plaintiff's co-workers was Alex Martinez, who was an employee of SMART.

The plaintiff alleges that, beginning in February 2009 and continuing through his "constructive discharge" on April 12, 2009, Stier and Martinez sexually harassed him. The plaintiff alleges that the two, sometimes in tandem, engaged in numerous acts of sexual harassment, which "included nudity, acts of masturbation, verbal sexual advances, sexually suggestive gestures, sexually suggestive noises, offensive practical jokes, sexually explicit comments, provocative text messages, pornographic video messages, and inappropriate touching of the Plaintiff." (*Id.*)

For instance, the plaintiff claims that "on or about March 5, 2009, Mr. Stier called employees into the shop where Mr. Martinez was sleeping in order to have them witness Mr. Stier remove his own clothing and place his body upon Mr. Martinez" and that, on or about March 20, 2009, "Mr. Stier removed his clothing while standing atop an aircraft, called out to employees on the floor to have them look up at him while he simulated intercourse with the

2

aircraft." (*Id.* at 5.) Additionally, the plaintiff alleges that "Mr. Stier directly observed Mr. Martinez grabbing the Plaintiff's crotch, waist and buttocks inappropriately" and that, "on or about April 10, 2009, Mr. Martinez removed his clothing in order to rub himself against a window where he could be seen by employees on their lunch break including Plaintiff." (*Id.*) The plaintiff also alleges that Martinez "frequently proposition[ed]" him, asking for and offering various lurid sexual favors. (*Id.* at 6.)

The plaintiff claims that he rebuffed all sexual advances, generally discouraged the inappropriate conduct, and repeatedly complained to Stier, but that Stier and Martinez threatened him with physical harm for objecting to the harassment and inappropriate behavior. The plaintiff also claims that the defendants (Johnson, SMART, and Embraer) all knew of the conditions of "discrimination and harassment" but permitted the conditions to continue. (*Id.* at 3.) The plaintiff alleges that, in mid-April 2009, he reported the harassment and discrimination to his recruiter at Johnson, but nothing was done to correct the problem and, around that time, the plaintiff was "constructively discharged" as he decided to stop reporting to the Facility "due to threats of physical harm from Mr. Stier and Mr. Martinez." (*Id.* at 3, 6.)

On December 17, 2009, the plaintiff commenced this action in the Circuit Court for Davidson County, Tennessee. (Docket No. 1 at 1.) After receiving his "right to sue" letter, the plaintiff filed an Amended Complaint in that court on March 17, 2010. (Docket No. 1 Ex. B.) The Amended Complaint asserts four claims against all defendants: (1) sexual discrimination that manifested itself in a hostile work environment and disperate treatment, (2) retaliation, (3) intentional infliction of emotional distress, and (4) negligent hiring, retention, and supervision

practices. (*Id.*)

On March 30, 2010, the defendants removed the case to this court, and Johnson and Embraer have filed Answers to the Amended Complaint. (Docket Nos. 1, 6-7.) On April 9, 2010, defendant SMART moved to dismiss counts I and II of the Amended Complaint for failure to state a claim. (Docket No. 10.)

## ANALYSIS

Counts I and II (sexual discrimination and retaliation) of the Amended Complaint allege causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Tennessee Human Rights Act (THRA), T.C.A. § 4-21-101 *et seq.*[2] (Docket No. 1 Ex. B at 3.) Defendant SMART has moved to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6).

**I.     Standard of Review**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).

---

[2]As both parties recognize, the Tennessee legislature intended for the THRA "to be coextensive with federal law," and, therefore, the analysis of the Title VII and THRA claims in this context is identical. *Allen v. McPhee*, 240 S.W.3d 803, 812 (Tenn. 2007).

4

The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

## II.    SMART's Motion to Dismiss

SMART does not challenge that the plaintiff's considerable allegations of sexual misconduct and harassment state claims for workplace sexual discrimination and retaliation under Title VII and the THRA. Rather, SMART makes only one argument in support of its Motion to Dismiss, that is, because "[t]here are no allegations that Plaintiff was an employee of SMART or supervised by SMART or SMART's agents," the plaintiff cannot sustain a claim based upon Title VII or the THRA against SMART, as those statutes are designed for the "protection of employees from discrimination by their employers, not as a general remedy for an employer's discrimination of private individuals who are not employees or job applicants." (Docket No. 11 at 2.) That is, Title VII and THRA actions must be brought against the plaintiff's employer, and because SMART did not employ the plaintiff, Counts I and II must fail.

5

(*Id.* at 3.)

In support of this view, SMART cites three cases, all of which stand for the proposition that a plaintiff fails to state a valid Title VII claim by alleging that he was terminated by his employer in retaliation for objecting to his employer's civil rights abuses that were directed at non-employees. (*Id.* at 2-3 citing *Rossell v. County Bank*, 2006 WL 777074, *2 (D. Del. May 13, 2006); *Taneus v. Brookhaven Mem'l Hosp.*, 99 F. Supp.2d 262, 267 (E.D.N.Y. 2000); *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125,135-36 (2nd Cir. 1999)). That is, a Title VII plaintiff must object to a discriminatory "employment practice" of the defendant. *See id.* These cases are not particularly helpful to the analysis here because they do not address whether, as a non-employer of the plaintiff, SMART still can have Title VII and THRA liability for workplace discrimination against the plaintiff.

In response, the plaintiff states that SMART may be liable under Title VII and the THRA, despite not being the plaintiff's employer. (Docket No. 24 Ex. 1 at 4.) That is, "[v]arious courts have recognized the theory of third-party interference with employment relationships by non-employers as a cognizable claim under Title VII." (*Id.*) The plaintiff points to *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1341-42 (D.C. Cir. 1973) and *Christopher v. Stouder Memorial Hospital*, 936 F.2d 870, 872-75 (6th Cir. 1991). (*Id.* at 5-6.) In those cases, the courts held that the plaintiff, a private nurse, could assert a Title VII claim against the non-employer hospital at which the plaintiff had worked, under the theory that the hospital's allegedly discriminatory conduct toward the plaintiff had interfered with the plaintiff's employment. (*Id.*)

6

The plaintiff also points to the *King v. Chrysler Corporation*, 812 F. Supp. 151, 152 (E.D. Mo. 1993) case. There, the defendant Chrysler claimed that the plaintiff, who was employed by the company that provided cafeteria services at Chrysler's facility, could not assert a Title VII claim against Chrysler based upon allegations of sexual harassment by a Chrysler employee in the cafeteria. *Id.* The court rejected Chrysler's argument, stating that "if the court were to accept Chrysler's position that it is not a proper defendant, Chrysler could allow a hostile work environment to exist because of the peculiar circumstances of its relationship with [the food services provider], although it could not do so if [the plaintiff] were in its own service." *Id.* at 153.[3]

More recently, the Sixth Circuit has recognized three potential "legal theories" on which Title VII liability can be asserted against a non-employer. *See Satterfield v. Tennessee*, 295 F.3d 611, 617 (6th Cir. 2002). The first two theories arise from situations in which the non-employer controls the plaintiff's employment or is an agent of the employer; the final theory, relevant here, protects the plaintiff from a defendant who, although not an employer, "significantly affects access of any individual to employment opportunities." *Id.* (internal quotation omitted).

While the court in *Satterfield* did not reject the "significantly affects access" theory, it indicated that the modern trend of the law has been to find a sufficient connection between the

---

[3] *See also Moland v. Bil-Mar Foods*, 994 F. Supp. 1061, 1073 (N.D. Iowa 1998)(holding that the trucking company employee plaintiff stated a cognizable claim under Title VII against a turkey possessing plant owner in the circumstance where (1) the plaintiff had been assigned by her employer to work weighing trucks at the processing plant and (2) she alleged that she had ultimately lost her job with the trucking company as the result of sexual harassment and discrimination by an employee of the possessing plant).

7

plaintiff and the non-employer defendant for purposes of Title VII liability only where the defendant actively controlled the plaintiff's access to employment. *Id.* In *Satterfield*, the plaintiff was a State of Tennessee employee who was required to undergo a physical exam to confirm that he could continue to perform his job functions. *Id.* at 613. The exam was performed by a private physician employed by a medical service company. *Id.* The physician's report concluded that the plaintiff was not fit for duty, and the plaintiff sued the physician and the medical service company claiming violations the Americans with Disabilities Act (among other things), under the theory that the physician and medical service company had discriminated against him and this "significantly affected access . . . to employment opportunities." *Id.* at 618. The court found that the State of Tennessee, not the physician or the medical service company, actually controlled the plaintiff's employment, and, therefore, the plaintiff did not have a viable civil rights claim against the physician and the medical service company on the "significantly affects access" theory. *Id.*

Under *Satterfield*, the plaintiff arguably faces an uphill climb in prevailing against SMART. Indeed, the Amended Complaint does not allege that SMART "controlled" the plaintiff's employment as that term is used in *Satterfield*, as the Amended Complaint alleges that SMART only provided co-workers (including Martinez) who worked alongside the plaintiff, and that the plaintiff's actual employment was controlled by Johnson and Embraer. (Docket No. 1 Ex. B.)

That said, for a few reasons, the court will decline, at this stage, to dismiss Counts I and II against SMART. First, SMART, through its briefing, has not shown that it is entitled to

8

dismissal here. Rather, SMART submitted a three-page brief that provided no "on point" authority and rested entirely on the incorrect premise that a non-employer can never have Title VII liability. Also, while *Satterfield* arguably narrows the "significantly affects access" theory, it does not reject it, indicating that the Sixth Circuit might recognize a Title VII claim where the plaintiff showed that a non-employer, through the discriminatory conduct of its employee, "significantly affected" the plaintiff's access to employment. Moreover, as noted above, in more factually analogous situations, at least two district courts have concluded that a plaintiff who alleges sexual discrimination and harassment against a non-employer based upon the workplace conduct of the defendant's employee states a valid claim under Title VII. *See Moland*, 994 F. Supp. at 1073; *King*, 812 F. Supp. at 153.

Here, the plaintiff has alleged that SMART's employee engaged in prolonged, and incredibly graphic, sexual harassment of the plaintiff, and the plaintiff has alleged that SMART "knowingly permitted" the misconduct to continue.[4] (Docket No. 1 Ex. B at 3, 6.) This misconduct, the plaintiff alleges, forced the plaintiff to resign from his position at Johnson, thereby "significantly affecting" his access to employment. (*Id.*; Docket No. 24 Ex. 1 at 7-8.) Arguing that SMART would clearly be liable under Title VII if Martinez and the plaintiff both worked for SMART, the plaintiff argues that "SMART should not avoid liability in this case due

---

[4]For instance, paragraph 30 of the Amended Complaint states: "[t]hroughout his assignment at [the Facility] . . . Mr. Martinez would frequently proposition Plaintiff, for example, asking him for sexual favors of [three types of favors listed] . . . offering sexual favors of [six types of favors listed] . . . requests to urinate on the Plaintiff, encouragement of homosexual group masturbation, simulation of self stimulation via inanimate aeronautical machinery, grabbing the Plaintiff's crotch, and sending lewd text messages and/or pornographic video messages to Plaintiff's phone." (Docket No. 1 Ex. 2 at 6.)

9

to the unique interactions of the Defendants in the employment setting."  (Docket No. 24 Ex. 1 at 8)(*quoting Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 50 (6th Cir. 1996) for the proposition that an employer has Title VII liability for sexual harassment by its employees when the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.")

In light of the facts alleged, the parties' briefing, and the law discussed above, the court concludes that the plaintiff "is entitled to offer evidence to support [his] claims," and, therefore, the plaintiff's claims against SMART should be allowed to proceed into the discovery phase of this proceeding.  That discovery should reveal facts bearing upon the precise scope of Martinez's conduct, his workplace interactions with the plaintiff, SMART's knowledge thereof, and SMART's relationship to the Facility.  Once these additional facts become clear, it will be more evident whether this is a case in which SMART can fairly be liable for "significantly affecting" the plaintiff's employment.

## CONCLUSION

For the reasons discussed herein, SMART's Motion to Dismiss will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge